**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
CANDY L. PINKHAM,

            Plaintiff,

vs.                                      **COMPLAINT**

BERNARD RIVERS, KEITH DONOHUE,
ANDRE FRONTIS, JUSTIN VELEZ, JANE
DOE

            Defendant.
------------------------------------------------------------X

By and through her counsel, Michael H. Sussman, Esq., plaintiff sues defendants for the blatant violation of her civil rights as follows:

**PARTIES**

1. Plaintiff, Candy L. Pinkham, resides within this judicial district.

2. Defendants, Bernard Rivers, Keith Donohue, and Justin Velez are employed as sworn police officers by and for the Town or Village of Goshen and reside and work within this judicial district. Defendants Andre Frontis and Jane Doe are deputy sheriffs employed by the Orange County Sheriff's Department.

**JURISDICTION**

3. As plaintiff alleges that defendants violated her rights as protected by the Fourth Amendment to the United States Constitution by arresting her falsely and without probable cause, this Honorable Court has jurisdiction pursuant to 28 U.S.C. sections 1331 and 1343 (3) & 4 and 42 U.S.C. sections 1983 and 1988.

1

**STATEMENT OF FACTS**

4. On March 14, 2023, acting jointly, defendants falsely arrested plaintiff for three charges lodged by defendant Rivers: unlawful imprisonment, 2d degree, obstruction of governmental administration and harassment, 2nd degree, physical contact.

5. Defendants collectively apprehended and handcuffed plaintiff, placed her in a patrol car, shackled her to a bench, and imprisoned her at the Town of Goshen Police Station for several hours.

6. Plaintiff was required to return to court six times before the charges against her were dismissed.

7. On or about August 14, 2023, the Town Court dismissed all of the charges and entered a sealing order with regard to the matter.

8. Ryan Minard, the person plaintiff allegedly falsely imprisoned, was standing outside of the plaintiff's home when defendants arrived, and none of the responding defendants observed him in an imprisoned state.

9. Plaintiff never engaged in any act which unlawfully imprisoned Ryan Minard, or any other person and defendants had no basis to lodge this charge.

10. Rather, Ryan Minard claimed that he had asked plaintiff to secure the family dog so he could leave the family residence and that plaintiff refused, causing him to suffer a nervous breakdown and call his therapist.

11. In fact, before arresting plaintiff, defendants knew that, at the time he claimed to have been "falsely imprisoned," Minard was upstairs in the residence with his boyfriend, plaintiff's son Leland who was available at all times to assist Ryan leave the residence by cabining the family dog.

2

12. On March 14, 2023, before arresting plaintiff, defendants learned from Leland that he was upstairs, available to assist Ryan with the dog, and that plaintiff was not preventing [in any manner] Leland from moving the dog in a manner which would have allowed Ryan to leave the residence.

13. Defendants also knew that plaintiff had just returned home from her job as a registered nurse, was otherwise engaged and took no action to falsely imprison Minard and in no way or manner prevented Leland from assisting Minard as needed.

14. No competent police officer, arriving to Minard standing outside the home and learning these facts, could or would have concluded that probable cause existed for his outlandish claim that plaintiff falsely imprisoned him.

15. Plaintiff had no conceivable reason to falsely imprison Ryan as, if anything, she preferred that he leave, not remain in, her home.

16. Likewise, defendants has no factual basis to charge plaintiff with obstructing governmental administration; instead, she fully cooperated with defendants who arrived at her house based on concocted claims which, as set forth above, were easily refuted; the responding defendants did not find Ryan falsely imprisoned and his account was internally inconsistent as, at once, he complained that plaintiff preventing him from leaving the house and would not allow him to re-enter the houses.

17. Rather than obstruct governmental administration, plaintiff responded appropriately to despicable police conduct in her presence, to wit: after his arrival, defendant Rivers forcefully told plaintiff that he would shoot her "fucking" dog if she opened the door to go inside of her home from the garage.

3

18. Shocked to hear any such threat and while standing in her garage, plaintiff immediately responded, stating she was going to call defendant Rivers' sergeant and press charges against him for his harassing comment [which made her feel unsafe] and a prior one he had made to her earlier the same day - that her estranged husband could kick the door in or burn the house down if he wanted to.

19. In response to plaintiff's statement that she would report his behavior to superiors, defendant Rivers determined to retaliate against the plaintiff by finding some basis to arrest her, however frivolous.

20. She did inquire as to why defendants were at her home, but such an inquiry does not represent any obstruction of governmental administration.

21. Plaintiff went upstairs and spoke there with defendant members of the Orange County Sheriff's Department.

22. Plaintiff honestly answered their questions and continued to politely protest the presence of defendant police officers in and around her home.

23. On no occasion did plaintiff engage in any conduct which obstructed governmental administration and defendants lacked probable cause to arrest her for this offense.

24. Finally, at no time did plaintiff harass Ryan Minard or touch him.

25. As of March 14, 2023, Minard was involved in an abusive relationship with Leland Pinkham.

26. Minard had resided for some two years at the Pinkhams' home.

27. Minard had serious drug addiction issues and was serving probation for an unauthorized entry into his father's home in Monroe, New York.

4

28. On March 14, 2023, Minard was high, and this should have been obvious to any competent police officer as it was to plaintiff, an experienced nurse who has worked in emergency rooms and been around addiction for years.

29. When defendants responded, Minard made no claim that plaintiff had physically harassed him.

30. When defendants responded, Minard complained that plaintiff had failed to let him out of the house to get a phone charger.

31. In fact, he had no need to exit the house to get a phone charger and used this as an excuse to exit the house and assist plaintiff's estranged husband enter the home.

32. Plaintiff was then seeking to avoid contact with her husband who had earlier made a baseless call to the police, prompted by her "talking too much" to him.

33. Defendant Rivers had cleared this call.

34. This frustrated plaintiff's husband, who claimed to remain locked out of the house and asked Ryan to come down from his upstairs bedroom and let him in.

35. Ryan could have asked Leland to take care of the dog but sought to blame plaintiff for his self-imposed entrapment and reported this to the police upon their arrival.

36. Any competent police officer would have understood from their comments the contrived nature of the "complaints" against  plaintiff and how her estranged husband sought to take advantage of the situation by badmouthing her without any basis.

37. After plaintiff made clear that the police had no business being in her house and, specifically, that defendant Rivers has crossed the line by enabling her husband to believe he could break into the house and then by threatening to shoot the family dog, defendants sought

any reason, however ridiculous, to "teach" plaintiff a lesson and together they sought to find some way to arrest her despite the evidence absence of any criminality afoot on her part.

38.  At no time did any of the defendant police officers conduct or complete the most basic investigation to ascertain whether Minard, the impaired complainant, could coherently account for the events.

39. Defendants lacked probable cause that plaintiff violated PL 240.26(1), which requires that she intended to "harass, annoy or alarm" another person and, with such intent, struck, shoved, kicked, or otherwise subjected another person to physical contact.

40. Defendants had no basis to ascribe any such intent to plaintiff.

41.  None of the defendants asked Minard who, if anyone, had witnessed his alleged confrontation with plaintiff when he sought to re-enter the house.

42.  In fact, plaintiff's estranged husband, Ralph Pinkham, was at the door when Minard sought to re-enter the home and, if asked, would have told defendants that plaintiff did not lay a hand on Minard and simply told him to remain outside the house.

43. But despite his presence and conversations with defendants, at no time before seizing plaintiff did any of them ask Ralph Pinkham about any claim that plaintiff laid hands on Minard.

44.  Minard himself told the police contradictory stories which would have led any competent police officer to know that his account could not be relied upon for any purpose.

45.  Moreover, at the time of plaintiff's arrest, Minard had not sworn out any supporting deposition and Rivers had directed that he be re-interviewed as a way to get this gullible, high young man to make a baseless accusation against plaintiff which could predicate her arrest, which remained defendant Rivers' illicit objective.

6

46. Likewise, none of the defendants interviewed Leland Pinkard about his involvement in these events, including why he did not simply assist his boyfriend, who was allegedly having a nervous breakdown and crying to his therapist, leave the house.

47. In short, individually and collectively, defendants had no basis to arrest or participate in the plaintiff's arrest.

48. Defendants each assisted in the arrest, whether by cuffing the plaintiff, escorting her to the patrol car or driving her from her home in cuffs to the police station.

49. And, after the baseless arrest, their body cameras show several of these defendants with huge, congratulatory grins as if they had solved a major crime as opposed to arresting a registered nurse who had engaged in no criminal activity at all but needed to be taught to heel to their authority.

50. By dint of this arrest, defendants embarrassed and humiliated the plaintiff and made her feel unsafe in her own home and community, caused ongoing and persistent emotional distress and her relocation from the home she had lived in for more than twenty years.

**CAUSES OF ACTION**

51. Plaintiff incorporates paragraphs 1-50 as if fully re-written herein.

52. By and through the actions set forth above, defendants violated the clearly established right of the plaintiff not to be subject to false arrest or unreasonable search/seizure in violation of the Fourth Amendment to the United States Constitution as made actionable by 42 section 1983.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Court assume jurisdiction of this matter, empanel a jury to hear each and every matter within its scope and authority, award to plaintiff and against

defendants, jointly and severally, $1,500,000 in compensatory damages and an equal sum, jointly and severally, in punitive damages, and the attorneys' fees and costs arising from this matter and enter any other relief required by law or equity.

Dated:  December 19, 2023

Respectfully submitted,

Michael H. Sussman [3497]

SUSSMAN & GOLDMAN
PO BOX 1005
GOSHEN,M NY 10924
(845)-294-3991
Sussman1@sussman.law

Counsel for Plaintiff Candy L. Pinkham

8