USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/17/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CANDY PINKHAM

                                    Plaintiff,

-against-

BERNARD RIVERS, KEITH DONOHUE,
ANDRE FRONTIS, JUSTIN VELEZ, JANE
DOE,

                                    Defendants.

---

**23 CV 10956 (NSR)**

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Candy Pinkham ("Plaintiff") commenced this action on December 19, 2023, asserting a claim under 42 U.S.C. § 1983 for alleged Fourth Amendment violations arising out of her March 14, 2023 arrest, against Orange County Sheriff's Deputies Andre Frontis and Justin Velez (the "County Defendants" or "County"), Town of Goshen Police Officers, Bernard Rivers and Keith Donohue (the "Goshen Defendants" or "Goshen"), and a Jane Doe Officer (collectively, "Defendants"). (Compl., ECF No. 1.)

Presently before the Court are Defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, brought separately by the Goshen Defendants and the County Defendants. (Goshen & County Mots., ECF Nos. 43 & 44.) For the reasons set forth below, both motions are GRANTED in their entirety.

## BACKGROUND

The following facts are drawn from Defendants' Statements of Material Facts submitted pursuant to Local Civil Rule 56.1 and are deemed admitted except where properly controverted by Plaintiff's Rule 56.1 counterstatements with citation to admissible evidence. Although Plaintiff submitted extensive counterstatements, many do not directly address the asserted facts, instead

1

denying them as "false" or "absurd," interjecting narrative argument, or offering subjective interpretations of body-worn camera footage. (*See, e.g.,* Pltf. Goshen 56.1 Counter ¶¶ 14, 21–34.)

Local Rule 56.1 requires a response that "specifically controvert[s]" each factual assertion with citation to admissible evidence. Local Civ. R. 56.1(c), (d). Argumentative commentary, legal conclusions, or extraneous narrative do not create genuine disputes of material fact. *See Costello v. N.Y. State Nurses Ass'n,* 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding Rule 56.1 responses consisting of "conclusory assertions" or "legal arguments" rather than proper factual disputes); *Baity v. Kralik*, 51 F. Supp. 3d 414, 417–19 (S.D.N.Y. 2014) (deeming facts admitted where responses were argumentative or failed to properly controvert asserted facts). This is not the first instance in which Plaintiff's counsel has been cautioned regarding noncompliant Rule 56.1 submissions. *See Baity*, 51 F. Supp. 3d at 417–18. The Court will not sift through improper responses to manufacture disputes on Plaintiff's behalf. Accordingly, to the extent Plaintiff's Rule 56.1 responses fail to directly and properly dispute Defendants' factual assertions with citation to admissible evidence, those facts are deemed admitted.

## A. Factual Background

On March 14, 2023, Orange County 911 initially received a call concerning a disturbance at 135 Old Minisink Trail in the Town of Goshen. (Goshen 56.1 ¶¶ 4–6, 8.) Officers responded to that initial call and cleared the scene without making an arrest. (*Id*. ¶¶ 8–9.) Shortly thereafter, Orange County 911 broadcast a second call for available units to respond again to the same address for what was reported as a physical domestic disturbance. (*Id*. ¶¶ 83, 86, 135-137, 167-168.) The second dispatch advised that the caller reported that Plaintiff would not allow the son's boyfriend to leave the home and that yelling and banging were occurring upstairs, although it was unclear whether the disturbance had become physical. (*Id*. ¶¶ 5-7.) Plaintiff maintains that the disturbance was verbal only

2

and that she was not preventing Ryan Minard from leaving her residence. (Pltf. Goshen 56.1 Counter ¶¶ 6, 10.)

Town of Goshen Police Officers Bernard Rivers and Kevin Donohue responded to the second dispatch, and Orange County Sheriff's Deputies Andre Frontis, Justin Velez, and Deputy Lichtenfeld (also spelled "Lichtenfield" in portions of the record) were dispatched to assist. (County 56.1 ¶¶ 1–2, 203; Goshen 56.1 ¶¶ 8–9.) An unidentified female officer, likely "Jane Doe" in the Complaint, was also present during the second response and later assisted in taking custody of Plaintiff. (Goshen 56.1 ¶ 49.) Officer Rivers acted as the senior Town officer on scene during the second response. (*Id.* ¶¶ 2, 85.)

When officers arrived during the second response, Ryan Minard was standing outside in the driveway. (Goshen 56.1 ¶ 12.) Deputy Frontis made contact with Minard and prepared an incident report stating that Minard appeared distraught and crying and reported that Plaintiff would not allow him to leave the residence. (*Id.* ¶ 17.) Frontis's report states that Minard claimed Plaintiff physically restrained him and refused to put away a Rottweiler dog known to be aggressive. (*Id.*) Plaintiff denies that she restrained Minard, maintains that Minard did not claim she blocked him from leaving, and asserts that he was clearly unrestrained outside when officers approached. (Pltf. Goshen 56.1 Counter ¶¶ 14, 17.)

Minard stated that he had gone downstairs because he needed a charger from his car and that Plaintiff would not put the dog away so that he could exit the house. (Goshen. 56.1 ¶¶ 178-181.) Minard's statement was corroborated by both Plaintiff's husband, Ralph Pinkham, who described the incident as "entrapment", and Plaintiff's son, Leland Pinkham. (*Id.* ¶¶ 25-28.) In a written statement dated March 14, 2023, Minard stated that Ralph entered the residence and let him out so that he could retrieve the charger from his vehicle. (*Id.* ¶ 16.) After retrieving the charger and attempting to reenter the house, Minard stated that Plaintiff placed both hands on his arms and pushed him back outside.

3

(*Id.* ¶¶ 16, 30.) Minard further stated that immediately before the contact, he called Plaintiff a "cunt," after which she told him to leave and placed her hands on him. (Pltf. Goshen 56.1 Counter ¶¶ 22, 29, 30.) He asserted that she did not touch him "hard." (*Id.* ¶¶ 112, 116.)

Plaintiff does not dispute that contact occurred but characterizes the contact as brief and nonviolent and occurring only after she demanded that he leave her home. (Pltf. Goshen 56.1 Counter ¶¶ 22, 82, 112, 116.) She denies that she prevented Minard from leaving and disputes that she physically restrained him in any meaningful way. (*Id.*) She also asserts that the family dog had already been secured in the garage, that Minard was capable of exiting safely, and that body-worn camera footage reflects inconsistencies in Minard's statements regarding both the alleged shove and the dog. (*Id.* ¶¶ 10, 14-15- 21–23.)

When officers initially approached the rear of the residence, they knocked at the back door but were directed to proceed toward the garage due to the presence of the family dog. (Goshen 56.1 ¶ 50.) Plaintiff then spoke with Officer Rivers directly in the garage. (*Id.* ¶ 51.) Plaintiff asserts that Officer Rivers raised his voice and threatened to "shoot her dog" if she opened the interior garage door, and further contends that he responded negatively when she indicated she would contact his supervisor. (Pltf. Goshen 56.1 Counter ¶¶ 51, 57.) She subsequently walked into the driveway, where she observed Minard, before walking back toward the house and encountering her brother, Craig Carr. (Goshen 56.1 ¶¶ 52-53.) Plaintiff then obtained her brother's cell phone and went into the backyard, where she placed a 911 call. (*Id.* ¶ 56.)

According to the incident reports of Deputies Frontis and Lichtenfeld, Officers Donohue and Rivers instructed Plaintiff not to reenter the residence while the investigation was ongoing and advised that she could be arrested for obstruction if she did so. (Goshen 56.1 ¶¶ 17–18, 196–198.) Defendants assert that Plaintiff nevertheless reentered the residence, locked the door, and went upstairs. (*Id.*) Another individual unlocked the door to permit officers to enter, after which Plaintiff

4

was located upstairs at the top of the stairway with her brother, Craig Carr. (*Id*. ¶ 18.) Officer Donohue directed Plaintiff to come downstairs so he could speak with her, but she refused and indicated she would speak from the landing. (*Id*. ¶¶ 17, 62.) The report further reflects that Plaintiff asserted it was her home, stated she would not leave, attempted to move toward a bedroom, and was told she was not free to leave. (*Id*.)

While these events were unfolding inside the residence, Deputy Frontis conducted a second conversation with Minard outside. (Goshen 56.1 ¶¶ 30, 189.) After returning inside, Frontis stated to Officer Rivers, "He's saying it's physical. If you want to arrest her, go for it." (*Id*. ¶ 191.) Immediately thereafter, Officer Donohue stated that Plaintiff would be "coming with us," and it is undisputed that Officer Rivers made the determination that Plaintiff would be arrested. (*Id*. ¶¶ 19, 192, 201.) The officers then proceeded up the stairs, Deputy Lichtenfeld took Plaintiff's right arm to prevent her from moving toward a bedroom, Plaintiff's brother attempted to block the officers, and Deputies Velez and Frontis moved the brother aside to allow for Plaintiff to be handcuffed. (*Id*. ¶ 18.) Plaintiff asserts that she complied with the arrest, instructed her brother not to interfere, and repeatedly stated that Officer Donohue could ask her questions. (Pltf. Goshen 56.1 Counter ¶¶ 18, 62, 156.) She also states that after being told she was under arrest, she asked why and received no explanation. (*Id*. ¶ 18.)

Officer Donohue and Deputy Lichtenfeld proceeded to place Plaintiff in handcuffs on the second floor. (Goshen 56.1 ¶ 63.) Plaintiff was escorted downstairs, through the garage, and into the driveway. (*Id*. ¶¶ 63–64.) An unidentified female officer, identified in the Complaint as "Jane Doe," took custody of Plaintiff for placement into a Town of Goshen patrol vehicle. (County 56.1 ¶ 6.) Prior to transport, Deputy Frontis patted Plaintiff down while holding her arm. (*Id*. ¶ 7.) Plaintiff was then transported to the Town of Goshen Police Department for processing. (*Id*. ¶ 8.) During processing, Plaintiff asserts she was handcuffed to a bench "for hours." (Pltf. Goshen 56.1 Counter ¶ 65.)

After the arrest, Officer Rivers signed a misdemeanor complaint on March 14, 2023 charging Plaintiff with Unlawful Imprisonment in the Second Degree (N.Y. Penal Law § 135.05), Obstructing Governmental Administration in the Second Degree ("OGA") (N.Y. Penal Law § 195.05), and Harassment in the Second Degree – Physical Contact (N.Y. Penal Law § 240.26(1)). (Goshen 56.1 ¶ 19.) Plaintiff was arraigned on those charges, and an order of protection was issued in favor of Minard. (*Id.* ¶¶ 66-67.) Plaintiff thereafter made multiple court appearances. (*Id.* ¶¶ 68.) The charges were ultimately dismissed and sealed in or about August 2023. (*Id.* ¶ 69.)

**B.  Procedural History**

Plaintiff commenced this action on December 19, 2023, asserting a Fourth Amendment false arrest claim under 42 U.S.C. § 1983 against Defendants. (Compl., ECF No. 1.) Thereafter, the County Defendants filed a motion for summary judgment, supported by a memorandum of law, and a Rule 56.1 Statement of Material Facts. (County Mot., Mem, & 56.1, ECF Nos. 43, 46-47.) The Goshen Defendants likewise moved for summary judgment and submitted a memorandum of law and a Rule 56.1 Statement. (Goshen Mot., Mem, & 56.1, ECF Nos. 44, 44-16-17).

Plaintiff opposed both motions and submitted counterstatements[1] pursuant to Local Rule 56.1. (Pltf. Goshen Opp. & 56.1 Counter, Pltf. County Opp. & 56.1 Counter, ECF Nos. 55, 58-59, 62.) Defendants thereafter filed their respective replies to Plaintiff's counterstatements. (County Reply & Goshen Reply, ECF Nos. 50, 53.)

---

[1] Plaintiff's submissions under Local Rule 56.1 substantially depart from the Rule's requirements. Plaintiff filed a lengthy response that far exceeds the scope of Defendants' Statements of Material Facts and includes extensive argument, legal conclusions, and narrative assertions rather than concise factual responses supported by citations to admissible evidence. Such submissions are improper and do not create genuine disputes of material fact. *See Allen v. Koenigsmann*, No. 23-CV-5651 (LAP), 2024 WL 403113, at *3 (S.D.N.Y. 2024) (Rule 56.1 statements "are not argument" and "should contain factual assertions with citation to the record."). Accordingly, to the extent Plaintiff's Rule 56.1 materials consist of argument, narrative, or otherwise noncompliant assertions, they are disregarded. *See* Local Rule 56.1(c), (d).

**LEGAL STANDARD**

### A. Motion for Summary Judgment (Rule 56(c))

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). Notably, "the judge's function is not [] to weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of*

*New York*, 88 F.3d 63, 71 (2d Cir. 1996). Rather, the non-moving party must advance more than a "scintilla of evidence," *Anderson,* 477 U.S. at 252, 106 S. Ct. 2505, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## B.  Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206,225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239,245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep' t*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

## DISCUSSION

Plaintiff's sole federal claim against the County and Goshen Defendants sounds in false arrest under the Fourth Amendment and fails as to all Defendants. (*See generally* Compl.) To prevail on a false arrest claim, a plaintiff must establish: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). The first three elements are not in dispute. It is undisputed that Plaintiff was intentionally arrested and handcuffed, that she was aware of the confinement, and that she did not consent to it. The sole issue is the fourth element—whether the confinement was "otherwise privileged."

"An arrest undertaken without a warrant must be supported by probable cause or else it violates the Fourth Amendment." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008). In other words, an arrest is privileged if supported by probable cause and it "is a complete defense to an action for false arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed." *Singer*, 63 F.3d at 119. Courts evaluate probable cause based on the "totality of the circumstances" and the "facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). A false arrest claim fails if probable cause existed for any offense; it is irrelevant "whether probable cause existed with respect to *each* individual charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

Accordingly, the Court examines whether probable cause existed for any of the offenses charged against Plaintiff—Unlawful Imprisonment, Obstructing Governmental Administration, or Harassment. (Goshen 56.1 ¶ 19.)

**A.  Unlawful Imprisonment in the Second Degree (N.Y. Penal Law § 135.05)**

Unlawful Imprisonment in the Second Degree occurs when a person "restrains another person." N.Y. Penal L. § 135.05 ("§ 135.05"). The Penal Law defines "restrain" as "to restrict a person's movements intentionally and unlawfully ... as to interfere substantially with his liberty by ... confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful." *Id.* § 135.00(1).

When officers receive information from a putative victim or eyewitness, probable cause ordinarily exists "unless the circumstances raise doubt as to the person's veracity." *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 69 (E.D.N.Y. 2015). Officers are also "entitled to rely on the implications of the information known to [them]" in assessing whether the suspect acted knowingly and unlawfully. *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989). If probable cause existed for this offense, Plaintiff's false arrest claim fails regardless of the viability of any other charge. *Jaegly* 439 F.3d at 154. The Court considers each Defendant in turn.

i.    *Officer Bernard Rivers*

The Court first considers whether probable cause existed as to Officer Bernard Rivers, the senior Town officer on scene and the officer who drafted and signed the misdemeanor complaint. [Cite 56.1] Viewing the totality of the circumstances known to Rivers at the time of arrest, the Court concludes that it did.

Officers were dispatched to a reported domestic disturbance involving allegations that Ryan Minard was being prevented from leaving the residence. (Goshen 56.1 ¶¶ 4–6, 8.) The 911 caller advised that Plaintiff would not allow Minard to exit and was refusing to secure the family Rottweiler so he could leave safely. (*Id.* ¶¶ 5, 7, 10.) That information was conveyed to responding officers before they arrived. (*Id.*) Upon arrival, Minard reiterated that he was not being permitted to leave and that the family's guard dog was not being secured to facilitate his exit. (*Id.* ¶¶ 16–17.) He later provided a written statement consistent with that account. (*Id.* ¶ 16.) Plaintiff's husband and son,

10

Ralph and Leland Pinkham, similarly conveyed that Minard was being prevented from leaving by Plaintiff. (*Id*. ¶¶ 25–28.) Lastly, the County Defendants' body-worn camera footage captures Plaintiff's son describing the Rottweiler as a "guard dog" and stating, in reference to the officers, that the dog would "kill all of you" if left unsecured in the house. (*Id*. ¶¶ 26-28; ECF No. 45, Exs. H & I.) That statement, viewed in conjunction with Minard's repeated assertions that he could not safely exit because the dog was not being restrained, reasonably reinforced the officers' conclusion that the animal was being used as a barrier to departure and that Minard's liberty was being substantially restricted.

Plaintiff counters that Minard was not physically confined, that no door was locked, and that he could have left the residence if he chose to do so.[2] (Pltf. Goshen 56.1 Counter ¶¶ 14, 17.) That argument misapprehends the standard. The statute does not require locked doors or physical grappling; it requires intentional conduct that "restrict[s] a person's movements … so as to interfere substantially with his liberty." N.Y. Penal Law § 135.00(1). Courts have found probable cause where a suspect blocked an exit or created conditions that prevented departure, even absent prolonged physical force. *See Thomas v. City of New York*, No. 24-CV-2534 (VEC) (HJR), 2025 WL 1603429, at *14 (S.D.N.Y. June 6, 2025) (finding probable cause where plaintiff blocked the complainant's exit and body-worn camera footage corroborated that he prevented her from leaving); *Posr v. Pascale*, 2017 WL 1366004, at *4 (E.D.N.Y. 2017) (probable cause existed where plaintiff used vehicle to block individuals from leaving property).

Here, officers were confronted with contemporaneous statements that Minard's movements were being intentionally restricted — not by mere verbal disagreement, but by refusal to secure a dog

---

[2] Plaintiff's contrary account also relies largely on her own affirmation and an unsworn handwritten statement submitted by Ralph Pinkham (ECF No. 61-1), which cannot be considered at summary judgment. *United States v. All Right, Title & Interest in Real Prop. & Appurtenances,* 77 F.3d 648, 657–58 (2d Cir.1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the ... motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court.") Conclusory assertions and inadmissible materials cannot create a genuine dispute of material fact. *Id; Capobianco v. City of New York,* 422 F.3d 47, 55 (2d Cir. 2005).

11

described as an "aggressive" guard animal and by maintaining conditions that allegedly rendered exit unsafe. (Goshen 56.1 ¶¶ 4–6, 16–17, 25–28; Exs. H & I.) A reasonable officer could conclude that the alleged use of a guard dog as a barrier to exit constituted a substantial interference with Minard's freedom of movement within the meaning of § 135.05, even in the absence of locked doors or physical grappling. Officer Rivers and the other officers were not required to determine definitively whether Minard *could have* left, only whether reasonably trustworthy information supported the belief that his liberty was being substantially interfered with, which in this case it was. *See Singer*, 63 F.3d at 119. Nor were they obligated to resolve factual disputes between the parties or conclusively determine guilt before acting. *Krause*, 887 F.2d at 371. Given the victim's consistent on-scene account, corroborating statements from other occupants, and the body-camera footage reflecting the dog's characterization as a guard animal, no circumstance existed that would have required Officer Rivers to doubt Minard's veracity. *See Selvaggio*, 93 F. Supp. 3d at 69.

Accordingly, probable cause existed for unlawful imprisonment, defeating the false arrest claim against Officer Rivers. *See Jaegly*, 439 F.3d at 154.

ii.    *Officer Keith Donohue*

The same conclusion applies to Officer Keith Donohue. Donohue responded to the domestic disturbance call and participated in the on-scene investigation. (Goshen 56.1 ¶¶ 2, 4–6.) He was aware that the 911 caller reported Minard was being prevented from leaving and that the family Rottweiler was not being secured to allow a safe exit. (*Id.* ¶¶ 5, 7, 10.) Upon arrival, Minard reiterated that he could not leave because the dog remained unsecured, and he later provided a written statement consistent with that account. (*Id.* ¶¶ 16–17.) Other occupants similarly conveyed that Minard was being prevented from leaving. (*Id.* ¶¶ 25–28.) Donohue was also present during the encounter captured on body-worn camera footage, which reflects the dog being described as a "guard dog" that

12

would "kill all of you" if left unsecured. (Exs. H & I.) That footage reinforced the seriousness of the reported restraint and the officers' understanding that the animal functioned as a deterrent to exit.

Even if Donohue did not personally hear every statement, he was entitled to rely on information communicated by Officer Rivers and other officers under the collective knowledge doctrine. *See United States v. Colon,* 250 F.3d 130, 135 (2d Cir. 2001) (probable cause may be based on the collective knowledge of officers working together); *Daniels v. City of New York*, No. 15-CV-2251 (RJS), 2016 WL 4368378, at *5 (S.D.N.Y. Aug. 14, 2016). Under the totality of the circumstances, Donohue possessed reasonably trustworthy information that Minard's freedom of movement was being substantially restricted by the refusal to secure a guard dog allegedly preventing safe exit. He was not required to independently verify each fact or resolve competing narratives before acting. *See Singer*, 63 F.3d at 119; *Krause*, 887 F.2d at 371. Accordingly, probable cause existed as to unlawful imprisonment with respect to Officer Donohue, and the false arrest claim against him fails as a matter of law. *See Jaegly*, 439 F.3d at 154

   iii.    *Deputies Andre Frontis and Justin Velez*

Plaintiff's claims against Deputies Frontis and Velez fail for an even more fundamental reason: this was a Town of Goshen investigation, led and controlled by Goshen officers. The undisputed record establishes that Officer Rivers was the senior officer on scene and the officer who drafted and signed the misdemeanor complaint. (Goshen 56.1 ¶¶ 2, 19, 85.) The County Deputies did not direct the investigation, did not issue the operative commands to Plaintiff, and did not make the arrest determination. (County 56.1 ¶¶ 3-5.)

Rather, Deputies Frontis and Velez responded in a limited support capacity. They spoke with Minard, gathered information, and relayed his account to the Goshen officers. (Goshen 56.1 ¶¶ 30, 189, 191.) They did not instruct Plaintiff to remain outside, did not determine that probable cause existed, and did not draft or approve the charging instrument. (*Id.* ¶¶ 17–18, 19, 196–198.) The body-

13

worn camera footage confirms that the scene was being directed by Goshen personnel. (Exs. H & I.) Even assuming arguendo that the Deputies participated in effectuating the arrest, that fact does not create liability. Officers assisting at a scene are entitled to rely on reasonably trustworthy information provided by an alleged victim and by fellow officers actively directing the investigation. *See Colon,* 250 F.3d at 135; *Daniels*, 2016 WL 4368378, at 5. The Deputies were not required to independently reassess the legal sufficiency of the charges where the Town officers possessed and acted upon probable cause.

Lastly, Plaintiff's attempt—raised for the first time in opposition—to recast her claims as a failure-to-intervene theory fails both procedurally and substantively. (Pltf. County Opp. at 11-13.) As an initial matter, a plaintiff may not amend her complaint or introduce a new theory of liability in opposition to a motion for summary judgment. *Brandon v. City of N.Y.,* 705 F.Supp.2d 261, 278 (S.D.N.Y.2010) ("It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment.); *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (same); *Heletsi v. Lufthansa German Airlines, Inc.,* No. 99CV4793(SJ), 2001 WL 1646518, at *1 n. 1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment."). Plaintiff's Complaint alleges only false arrest and contains no allegation that any Defendant failed to intervene to prevent a constitutional violation. (*See generally* Compl.) Accordingly, Plaintiff's belated failure-to-intervene theory provides no basis for liability.

Accordingly, because probable cause supported the arrest and Deputies Frontis and Velez neither directed, initiated, nor independently caused the arrest, no reasonable jury could find them liable for false arrest as a matter of law.

iv.     *Jane Doe Officer*

Plaintiff's claim against the unidentified "Jane Doe" officer fails for similar—and even clearer—reasons. Plaintiff identifies no evidence that this officer directed the investigation, issued commands, participated in the probable cause determination, or influenced the charging decision. (Goshen Mem. at 17–18.) The record reflects only Jane Doe's post-arrest assistance—specifically, taking custody of Plaintiff for placement into the patrol vehicle after the arrest decision had already been made by Officer Rivers. (County 56.1 ¶ 6.)

Section 1983 liability requires personal involvement in the alleged constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Mere presence at the scene or assistance with ministerial post-arrest procedures is insufficient. *Ricciuti*, 124 F.3d at 128. Plaintiff presents no evidence that Jane Doe exercised independent judgment regarding probable cause or acted outside the collective knowledge of the officers directing the investigation. Accordingly, the false arrest claim against the Jane Doe officer fails as a matter of law.

### B. Obstruction of Governmental Administration (N.Y. Penal Law § 195.05)

Even if probable cause did not exist as to Unlawful Imprisonment, probable cause existed for at least one of the other charges against Plaintiff—OGA in the Second Degree. (Goshen 56.1 ¶ 19.) A person is guilty of OGA in the Second Degree when he "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]" N.Y. Penal Law § 195.05.

Although interference must be at least in part "physical" and "cannot consist solely of verbal statements," officers may consider both words and actions in determining whether conduct rises to obstruction. *Kass v. City of New York*, 864 F.3d 200, 209 (2d Cir. 2017). Physical force is not required; the element is satisfied where an individual "intrudes himself into, or gets in the way of, an ongoing police activity," and engages in conduct sufficiently "inappropriate and disruptive" at the scene of an

15

official function. *Id.* at 210; *People v. Romeo*, 9 A.D.3d 744, 861–62 (3d Dep't 2004) (holding interference may be established "even if there is no physical force involved"). New York courts construe the statute broadly, and obstruction may be predicated on refusal to obey lawful police orders that impede official duties. *See In re Davan L.*, 91 N.Y.2d 88, 91 (1997) ("Criminal responsibility should attach to minimal interference set in motion to frustrate police activity."); *Fana v. City of New York*, No. 15 Civ. 8114, 2018 WL 1581680, at *8 (S.D.N.Y. Mar. 27, 2018) (interference may be based on refusal to obey orders to "leave a premises" or "keep away from an area where a disturbance is taking place," provided the refusal creates "some other hazard or interference").

The Court addresses each defendant in turn.

### i. Officer Bernard Rivers

Officer Rivers had probable cause to arrest Plaintiff for OGA. The body-worn camera footage and record reflect that officers were conducting an active domestic disturbance investigation involving allegations that Minard had been prevented from leaving the residence. (Goshen 56.1 ¶¶ 4– 6, 16.) In that context, officers were attempting to stabilize a volatile scene.

During the investigation, Officers Rivers and Donohue expressly directed Plaintiff not to reenter the residence and warned her that doing so could result in arrest for obstruction. (Goshen 56.1 ¶¶ 17–18, 196–198.) The body-worn camera footage confirms that, despite those explicit warnings, Plaintiff attempted to open the interior garage door and ultimately reentered the home in direct contravention of the officers' instructions. (*Id.* ¶¶ 14, 17, 196–198.) After regaining entry, she locked the door behind her and ran upstairs toward her bedroom—facts she does not dispute in her Rule 56.1 response. (*Id.* ¶ 58; Pltf. Goshen 56.1 Counter ¶ 58.) This was not passive noncompliance; it was deliberate defiance of lawful commands issued during an active domestic disturbance investigation. By locking the door and retreating upstairs, Plaintiff temporarily impeded officers' access to the scene and forced them to resecure entry before continuing their investigation. In the context of a volatile

16

domestic call involving allegations that an aggressive dog had already been used to prevent a complainant's exit, Plaintiff's actions reasonably heightened officer-safety risks and materially interfered with the orderly administration of the investigation. *See Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998) ("Courts have recognized the combustible nature of domestic disputes.")

Once inside, Plaintiff positioned herself on the upstairs landing with her brother, Craig Carr, and refused repeated directives to come downstairs so officers could continue their investigation. (Goshen 56.1 ¶¶ 17–18, 196–198.) Rather than comply, she insisted that officers speak to her from the landing and affirmatively declined to descend. (*Id*. ¶ 62.) This refusal followed her prior defiance of explicit instructions not to reenter the residence and her act of locking the door behind her, thereby requiring officers to regain access before proceeding. When officers moved upstairs to effectuate the arrest, Carr physically interposed himself between Plaintiff and the officers, delaying their access until Deputies Velez and Frontis moved him aside. (*Id*. ¶ 18.) The body-worn camera footage further reflects Plaintiff gesturing toward Officer Rivers and speaking in an animated and confrontational manner while refusing to comply. (Exs. H & I.)

While verbal disagreement alone is insufficient to establish obstruction, the statute is satisfied where an individual intrudes into or gets in the way of an ongoing police activity through conduct that is at least partly physical and disruptive. *See Kass,* 864 F.3d at 210. Here, Plaintiff's conduct went beyond speech. By reentering the residence after a clear warning, locking the door, retreating upstairs, refusing lawful directives to descend, and remaining in a position that required officers to advance into the home to secure her, she materially impeded the officers' ability to stabilize and investigate a volatile domestic disturbance scene. *See Tierney*, 133 F.3d at 197.

Probable cause requires only reasonably trustworthy information sufficient to warrant a person of reasonable caution in believing an offense has been committed. *See Singer,* 63 F.3d at 119. The inquiry is objective and does not turn on Plaintiff's subjective belief that she was cooperating.

17

*See Jaegly,* 439 F.3d at 153. Under the totality of the circumstances—including the domestic-disturbance context, the explicit warning that reentry could constitute obstruction, Plaintiff's deliberate reentry and locking of the door, her retreat upstairs, and her refusal to descend—a reasonable officer could conclude that Plaintiff intentionally interfered with and impeded an ongoing police investigation.

Plaintiff's contrary characterization of her conduct does not negate probable cause. On this record, no reasonable jury could conclude that Officer Rivers lacked probable cause to arrest Plaintiff for OGA.

> ii.     *Officer Keith Donohue*

The analysis as to Officer Donohue is materially the same as Officer Rivers with respect to OGA. Donohue was present during Plaintiff's reentry, observed her refusal to comply with directives, and participated in the effort to regain control of the scene. Even assuming arguendo that Rivers made the ultimate arrest determination, Donohue personally witnessed conduct sufficient to establish probable cause for obstruction. Moreover, as discussed in the unlawful-imprisonment section, Donohue was entitled to rely on the collective knowledge of the officers directing the investigation. *See Colon*, 250 F.3d at 135. Accordingly, because probable cause existed to arrest Plaintiff for OGA, Plaintiff's false arrest claim against Officer Donohue fails as a matter of law.

> iii.     *Deputies Andre Frontis and Justin Velez*

The analysis as to the County Deputies parallels the unlawful-imprisonment discussion and need not be repeated in full.

This was a Town of Goshen investigation directed by Officer Rivers. (Goshen 56.1 ¶¶ 2, 19, 85.) Deputies Frontis and Velez responded in a support capacity. (County 56.1 ¶¶ 3–5.) They did not issue the operative commands to Plaintiff, did not direct the investigation, and did not determine that probable cause existed. (*Id.*) The body-worn camera footage further confirms the limited role of the

County Deputies. The recordings reflect the Deputies expressly clarifying that the arrest decision belonged to the Town of Goshen officers and deferring to them as to whether Plaintiff would be arrested. (Exs. H & I.) The Deputies were entitled to rely on those officers' assessment of probable cause. *See Colon,* 250 F.3d at 135; *Daniels*, 2016 WL 4368378, at 5.

Because probable cause existed and the County Deputies neither independently initiated nor directed the arrest, Plaintiff's OGA-based false arrest claim against Deputies Frontis and Velez fails as a matter of law.

### iv.    *Jane Doe Officer*

The claim against the unidentified "Jane Doe" officer fails for the same reasons discussed in the unlawful-imprisonment section. Plaintiff identifies no evidence that Jane Doe directed the investigation, issued any operative commands, influenced the arrest decision, or participated in the probable cause determination. (Goshen Mem. at 17–18.) Section 1983 liability requires personal involvement in the alleged constitutional violation. *Ashcroft,* 556 U.S. at 676. Where, as here, an officer merely assists in executing an arrest supported by probable cause, § 1983 liability does not attach.

Because probable cause existed and the record contains no evidence that Jane Doe exercised independent judgment or played any role in initiating or directing the arrest, Plaintiff cannot establish the requisite personal involvement. Accordingly, the false arrest claim against the Jane Doe officer fails as a matter of law.[3]

---

[3] Because the Court concludes that probable cause existed to arrest Plaintiff for Obstructing Governmental Administration and Unlawful Imprisonment in the Second Degree, her false arrest claim fails as a matter of law. The Court therefore need not address the Harassment charge. *See Jaegly,* 439 F.3d at 154 (a false arrest claim fails if probable cause existed as to any offense). Accordingly, the Court also need not reach Defendants' alternative argument that they are entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts may resolve § 1983 claims on any dispositive ground without reaching the constitutional question). In any event, for substantially the reasons discussed above, Defendants would be entitled to qualified immunity because, at a minimum, arguable probable cause existed. *See Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

**CONCLUSION**

For the foregoing reasons, the Court concludes that probable cause existed to arrest Plaintiff for Obstructing Governmental Administration in the Second Degree and Unlawful Imprisonment in the Second Degree as to all Defendants. Because probable cause defeats Plaintiff's Fourth Amendment false arrest claim as a matter of law, summary judgment is warranted in Defendants' favor. *Ackerson,* 702 F.3d at 19. Accordingly, the Court GRANTS the motion for summary judgment filed by Defendants Andre Frontis and Justin Velez (ECF No. 43), and the motion for summary judgment filed by Defendants Bernard Rivers and Keith Donohue (ECF No. 44). The Clerk of Court is respectfully directed to enter judgment in favor of Defendants Bernard Rivers, Keith Donohue, Andre Frontis, Justin Velez, and Jane Doe, terminate the motions at ECF Nos. 43 and 44, and terminate this action.

SO ORDERED.

Dated: February 17, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

20